**IN the MATTER OF the SEARCH WARRANT FOR: [REDACTED]@ HOTMAIL.COM et al.**

**Case No. 14–mj–71388–PSG**

United States District Court,
N.D. California,
San Jose Division.

Signed November 25, 2014

## ORDER DENYING MOTION PURSUANT TO 18 U.S.C. § 2705(b)

PAUL S. GREWAL, United States Magistrate Judge

A typical federal magistrate judge's courtroom calendar on criminal duty in 2014 looks much like it did in 1986, when Congress passed the Electronic Communications Privacy Act. Defendants make their initial appearances in the courtroom. Rights are read and detention decisions made. Perhaps an out-of-district case will require an identification and removal hearing. Every week or so, a grand jury foreperson or deputy appears bearing indictments in hand. A handful of agents, family members and others might look on, but no more than that. A 1986 magistrate, as we were simply called back then, would feel right at home.

Not so in chambers, where the bulk of criminal duty is still performed. There, my historical colleague might wonder, where are all the search warrant applications? Not the applications for email warrants, or warrant applications for location data or cell phone records, but the old-fashioned kind. The kind where a house hid drugs. Or guns. The kind where the property owner or occupant was the target. At least in the federal courthouse of Silicon Valley, we still see such warrant applications, but they are a distinct minority. Warrants for location data, cell phone records and especially email rule the day.

In this new order Rule 41 of the Federal Rules of Criminal Procedure stills holds sway. But by virtue of the government's significant interest in the stored email of service providers, it is the ECPA, and especially Title II of the ECPA, the Stored Communications Act,[1] that captures the lion's share of the court's attention.

In the instant application . before the court, which generally seeks email on the servers of Microsoft Corporation, one particular provision of Title II stands out: 18 U.S.C. § 2705(b). Pursuant to that section, the government seeks not only a warrant for the email at issue, but also an order prohibiting Microsoft from disclosing the existence of the warrant to anyone.

After studying the investigating agent's affidavit, the court agrees that under Rule 41, there is probable cause to justify ordering Microsoft to give the agent the email he has requested.[2] The court is further satisfied that, as the plain language of Section 2705(b) requires, there is reason to believe that notification of the warrant will, among other things, seriously jeopardize the agent's investigation.

The problem is that the government does not seek to gag Microsoft for a day, a month, a year, or some other fixed period. Having persuaded the court that a gag order is warranted, it wants Microsoft gagged for ... well, forever.

Try as it might, the court cannot square this demand with other plain language in the section that authorizes the court to preclude notice only "for such period as the court deems appropriate."[3] It is certainly true that an infinite period might be qualify a "period" as a matter of mathematics or set theory. But a more common sense view of "period" in the statute suggests some limit less than infinity.

. After learning of the court's unwillingness to sign on to its request, the government raised two primary arguments. One

---

1. *See* 18 U.S.C. § 2701 *et seq.*

2. Fed. R. Crim. P. 41(d)(1).

3. 18 U.S.C. § 2705(b).

was that Congress showed that it knew how to impose a limit on the gag period in subsection (a) of the same section.[4] Under Section 2705(a), the court may delay notice by up to 90 days.[5] The other was that its proposed order would permit Microsoft to disclose the underlying warrant "upon further notice of this Court." Neither argument, however, is persuasive.

First, Section 2705(b) clearly requires the court to define some end. That end could come in less than 90 days, 90 days exactly or even more than 90 days. Forever is by definition without end.[6]

Second, even if Microsoft could be relieved by a subsequent court order, this offers no practical solution to the problem of a never-ending initial order. How exactly would the court come to take such action? Surely the grounds for such a second order could come only at the behest of the government, which uniquely has access to the underlying facts of the investigation. But absent some expiration date on the initial order, what reason would the government ever have to request lifting the order? Pursuant to Section 2703(d), Microsoft could of course request that the order be lifted, or the court could issue the order sua sponte. But without access to the facts, there would be no basis upon which the court could make any decision. And nothing in the statute suggests putting the burden on the provider to guess that circumstances might have changed so that a request to lift the order is warranted.

If the court were dealing with a grand jury subpoena, with its historical presumption of secrecy, perhaps an infinite period of Microsoft silence would be appropriate.[7] But in the absence of such a historical presumption, the First Amendment rights of both Microsoft and the public, to say nothing of the rights of the target, must be given at least some consideration. A limited period of nondisclosure, as justified by the government's initial application, coupled with an obligation on the government to seek renewal if the circumstances justifying the initial period remain in effect, better squares with Section 2705(b)'s language and purpose.

A final point. Even if the statute could fairly be read to permit a court prohibiting notification indefinitely upon a proper showing, no such showing was made here. In the language of the statute, there is no "reason to believe that notification of the warrant ... will result in" any of the conditions enumerated in the statute.

The government's nondisclosure request is DENIED. The government may submit a renewed request justifying a finite period, if it so chooses.

**SO ORDERED.**

---

4. *See* 18 U.S.C. § 2705(a).

5. *See id.*

6. *Cf. In re Stealing & Non–Disclosure of Pen/ Trap/2703(D) Orders,* 562 F.Supp.2d 876, 878, 886 (S.D.Texas 2008) (holding that "an indefinite non-disclosure order [regarding a pen register/trap-and-trace device] is tantamount to a permanent injunction of prior restraint").

7. *Cf. Matter of Application of the United States of Am.,* Case No. 1:14–mc–00287, 45 F.Supp.3d 1, 7, 2014 WL 2000347, at *5 (D.D.C. Apr. 28, 2014); *Matter of Application of United States of Am. for an Order of Nondisclosure Pursuant to 18 U.S.C. § 2705(B) for Grand Jury Subpoena # GJ2014031422765,* Case No. 14–mc–0296, 45 F.Supp.3d 1, 7, 2014 WL 2000343, at *5 (D.D.C. Apr. 28, 2014).