## IN RE SEARCH WARRANT ISSUED TO GOOGLE, INC.

### CASE NO. 5:17–mj–532–HNJ

United States District Court,
N.D. Alabama, Northeastern Division.

Signed September 11, 2017

## MEMORANDUM OPINION AND ORDER

HERMAN N. JOHNSON, JR.,
UNITED STATES MAGISTRATE
JUDGE

The United States served on Google, Inc., a search warrant issued by the Court pursuant to the Stored Communications Act, 18 U.S.C. § 2703 et seq. Google challenged the warrant's applicability to information stored in foreign territory, and pursuant to the Government's Motion to Compel the undersigned ordered Google to disclose the foreign-stored data. In the briefing on the Motion to Compel, Google challenged tire Court's directive prohibiting disclosure of the warrant "unless and until otherwise authorized to do so by the Court," and it requests an amendment to the Order to establish a fixed period of nondisclosure to allay First Amendment concerns. For the reasons set forth herein, the Court **GRANTS** Google's request and **ORDERS** a 180–day period of nondisclo-

sure for the search warrant, subject to the Government's application, on or before the expiration of the 180–day period, for an extension of the nondisclosure Order.

## I. BACKGROUND

Congress enacted the Stored Communications Act as Title II of the Electronic Communications Privacy Act of 1986. Section 2703 of the SCA regulates government access to stored communications, in particular wire or electronic information such as emails, texts, social media communications, etc. 18 U.S.C. § 2703. Section 2705 of the statute provides that a court may order a provider "not to notify any other person of the existence" of a "warrant, subpoena, or court order" regarding certain requested information "for such period as the court deems appropriate ...." [1] A court may enter such nondisclosure orders when "there is reason to believe that notification of the existence of the warrant, subpoena, or court order will result in—

(1) endangering the life or physical safety of an individual;

(2) flight from prosecution;

(3) destruction of or tampering with evidence;

(4) intimidation of potential witnesses; or

(5) otherwise seriously jeopardizing an investigation or unduly delaying a trial."

*Id.*

In the case at bar, the Court issued a warrant pursuant to § 2703 commanding Google to disclose information associated with several email accounts. In addition, pursuant to § 2705(b) the Court ordered Google not to disclose the existence of the warrant "unless and until otherwise authorized to do so by the Court." Google challenges the order as violating the First Amendment because it contemplates an indefinite nondisclosure period.

## II. ANALYSIS

As an initial matter, the parties do not dispute that the Order's terms established an indefinite period of nondisclosure. The parties debate several other aspects of the Order, principally whether the SCA permits indefinite nondisclosure periods, and if so, whether such measures violate the First Amendment. As the following analysis portrays, § 2705(b) generally contemplates nondisclosure periods of limited time durations, and this interpretation of § 2705(b) avoids a conflict with the First Amendment.

### A. § 2705(b) Does Not Generally Permit Indefinite Nondisclosure Orders

█ The Government contends § 2705(b) permits nondisclosure orders of indefinite duration. The Court agrees, but only in limited circumstances, not the broad scope lodged by the Government. Construing the SCA and related statutes by reviewing the ordinary meaning of their terms, and the structure of the statutes as a whole, reveals that § 2705(b) does not generally permit nondisclosure orders lacking a termination date.

As stated previously, § 2705(b) permits nondisclosure orders "for such period as the court deems appropriate." In support of its arguments, the Government relies upon several cases holding that these terms permit periods of indefinite duration. Most prominently, in *In the Matter of*

---

[1] A court may order such nondisclosure when § 2703(b)(1) permits the Government to decline to notify a warrant's target, or § 2705(a) permits delayed notice to a target when information is sought via court order or subpoena. *See* 18 U.S.C. § 2705(b). Those particular aspects of § 2705(b) do not present an issue here.

*the Search Warrant for [Redacted].com* No. 16-2316M, 2017 WL 1450314, 248 F.Supp.3d 970 (C.D. Cal. Mar. 31, 2017), the court held that § 2705(b) permits non-disclosure orders of indefinite duration.

In reaching this conclusion, the court relied upon a particular definition of the term "period":

"8 a : a chronological division (as of a life, a development) : Stage < ~ of infancy > < ~ of preparation and training > < ~ of incubation of a disease > ... c : a time often of indefinite length but of distinctive or specified character : Spell < ~ of laziness > < ~s of anxiety > < a ~ of wet weather > < ~s of rising prices >"

*Id.* at 977, at *4 (quoting *Webster's Third New International Dictionary* (Merriam—Webster Inc. 2002) (brackets in original). The court focused upon the reference to "indefinite length" in the definition, and determined that "the portion of time characterized by the adverse result or results that will occur if the government's warrant or other process is disclosed" may be "indefinite." *Matter of Search Warrant for [redacted].com*, 248 F.Supp.3d at 977, 2017 WL 1450314, at *4.

Furthermore, the court compared § 2705(b)'s terms with § 2705(a)'s delayed notice provision. Section 2705(a) permits the government to delay notice to a target of a court order or subpoena for 90 days. As the court stated, " 'where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' " *Matter of Search Warrant for [redacted].com*, 248 F.Supp.3d at 977, 2017 WL 1450314, at *4 (quoting *Kucana v. Holder*, 558 U.S. 233, 249, 130 S.Ct. 827, 175 L.Ed.2d 694 (2010)). Pursuant to the distinction between §§ 2705(a) and (b), the court declared that § 2705(b) does not re-quire a specified duration of time. *Matter of Search Warrant for [redacted].com*, 248 F.Supp.3d at 977, 2017 WL 1450314, at *4.

The afore-discussed decision, as well as the Government in the dispute at bar, rely upon two other district court cases permitting nondisclosure orders of indefinite duration. *See In re Application of the U.S. For An Order Pursuant To 18 U.S.C. § 2705(b)*, 131 F.Supp.3d 1266, 1270 (D. Utah 2015) (Section 2705(b) "deals with *precluding* notice instead of *delaying* notice. While notice from the government to the subscriber may be *delayed* for a limited time [under Section 2705(a) ], notice by the provider to the subscriber may be *indefinitely* restrained [under Section 2705(b) ].") (emphasis in original); *Microsoft Corp. v. United States Dep't of Justice*, 233 F.Supp.3d 887, 895 (W.D. Wash. 2017) (" 'The combined effect of [Sections 2703] and 2705(b) is that ... the government may seek an order under § 2705(b) that restrains the provider indefinitely from notifying the subscriber.' ") (quoting *In re Application of the U.S.*, 131 F.Supp.3d at 1271) (brackets in original).

The undersigned respectfully disagrees with the holding that § 2705(b) permits nondisclosure orders of indefinite duration, in particular if a court orders such nondisclosure "unless and until authorized to do so by the court." The ordinary-meaning canon of statutory interpretation posits that although "common English words have a number of dictionary definitions, some of them quite abstruse and rarely intended[,] [o]ne should assume the contextually appropriate ordinary meaning unless there is reason to think otherwise." Antonin Scalia & Bryan A. Garner, *Reading Law: the Interpretation of Legal Texts* 70 (2012); *see also* James Kent, *Commentaries on American Law* 432 (1826) ("The words of a statute are to be

taken in their natural and ordinary signification and import ....") (cited in, Scalia, *supra,* at 69 n. 1). As a matter of textual interpretation, Congress intended the ordinary meaning of the term "period" to apply under § 2705(b).

The ordinary meaning of the term "period" connotes a limited duration of time, not an indefinite length. Several other dictionaries assume this more common definition of the word "period." *See Webster's New Universal UNABRIDGED DICTIONARY* 1071 (1989) ("**1.** a rather large interval of time that is meaningful in the life of a person, in history, etc., because of its particular characteristics: *a period of illness; a period of expansion for a company; a period of social unrest in Germany.* **2.** any specified division or portion of time: *architecture of the period 1530–1800 ....* **13.** the time during which anything runs its course.)' (emphasis in original); *Webster's New World Compact School and Office Dictionary* 318 (1989) (**1.** the interval between successive occurrences of an event **2.** a period of time characterized by certain processes, etc. [a *period* of change] ) (emphasis in original); *Webster's II New Riverside University Dictionary* 874 (1984) ("**1.** An interval of time marked by the occurrence of certain conditions or events <a *period* of six weeks> ... **8.** A point or portion of time at which something is ended ....") (emphasis in original); *see also The American Heritage Dictionary of the English Language* (Sept. 8, 2017), https://ahdictionary.com/word/search.html?q=PERIOD ("1. An interval of time characterized by the occurrence of a certain condition, event, or phenomenon: a period of economic prosperity .... 8. A point or portion of time at which something is ended; a completion or conclusion ....").

One presumes Congress intended the phrase "period as the court deems appropriate" to guide courts in establishing a specific time duration, i.e., a "period of six weeks." The ordinary meaning of the term "period," especially when qualified by the phrase "as the court deems appropriate," connotes a portion of time with specified duration, particularly when the length of time corresponds to the occurrence of particular events listed in § 2705(b). That is, the selection of an appropriate period should reflect the duration of time necessary to allay the risk: to someone's life or physical safety; a flight from prosecution; the destruction of or tampering with evidence; the intimidation of potential witnesses; or to an investigation or trial commencement. 18 U.S.C. § 2705(b)(1)–(5). In most situations, a court and the government should be able to estimate when such risks dissipate, especially as those risks generally correspond to circumstances the Government and the Court encounter regularly. The appropriate period should not reflect a duration comparable in connotation to a "period of laziness," a "period of anxiety," a "period of wet weather," or a "period of rising prices," which are the examples cited in the dictionary relied upon by the Court in *Matter of Search Warrant for [redacted].com. See* 248 F.Supp.3d at 977, 2017 WL 1450314, at *4 (quoting *Webster's Third New International Dictionary* ).

More critically, examining other provider, non-disclosure provisions in the SCA and companion statutes buttresses this proposed interpretation. As intimated previously, "[i]n ascertaining the plain meaning of [a] statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988); *see also Kucana,* 558 U.S. at 249, 130 S.Ct. 827 ("where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is

generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion"). As discussed previously, § 2705(a) contains a 90–day, delayed-notice period, yet that period of nondisclosure delineates the government's obligation to the subscriber or customer targeted by an order or subpoena. The SCA, and the larger statute of which it is a part, the ECPA, contain other nondisclosure provisions appertaining to providers, and the structures of their provisions clearly leans against indefinite-duration orders under § 2705(b).

To wit, § 2709 of the SCA, entitled "Counterintelligence access to telephone toll and transactional records," states that providers must not disclose that the Federal Bureau of Investigation "has sought or obtained access to information or records" under that statutory section pursuant to a national security letter (NSL) request. Pub. L. 99–508, 100 Stat. 1848(Oct. 21, 1986).[2] On its face, § 2709 constitutes a complete nondisclosure provision with no time period prescribed. However, even this nondisclosure provision, involving counterintelligence investigations, contains limitations, as discerned recently in a review of § 2709's 2015 amendment:

> Congress ... required the Attorney General to promulgate procedures for periodically reviewing and terminating any nondisclosure requirements issued in connection with an NSL. Pub. L. No. 114–23, Title V, § 502(f), 129 Stat. at 288 (codified at 12 U.S.C. § 3414 note). The Attorney General adopted such procedures in November 2015. Termination Procedures for National Security Letter Nondisclosure Requirement, Fed. Bureau of Investigation (Nov. 24, 2015),

> https://www.fbi.gov/file-repository/nsl-ndp-procedures.pdf) .... Under these procedures, any nondisclosure requirement must terminate when the underlying investigation is closed or "on the three-year anniversary of the initiation" of the investigation, unless "the FBI makes a determination that one of the existing statutory standards for nondisclosure is satisfied." Once the FBI has determined that nondisclosure is no longer required, it must provide written notice to the recipient to that effect. If the FBI does not terminate the nondisclosure requirement at either of these occasions, the recipient retains the right to challenge the requirement in district court. 18 U.S.C. § 3511(a).

*In re National Security Letter*, 863 F.3d 1110, 1118–19 (9th Cir. 2017). Therefore, even § 2709's nondisclosure provision contains a termination date, as ordered by Congress and established by the Attorney General.

Even more analogous, the Pen Registers and Trap and Trace Devices Act of the ECPA, a companion law to the SCA which governs law enforcement requests for installation of the Act's eponymous instruments, permits court orders directing providers not to "disclose the existence of the [the instruments] or the existence of the investigation to the listed subscriber, or to any other person, *unless or until otherwise ordered by the court.*" Pub. L. 99–508 § 3123(d)(2) (emphasis added), *codified at* 18 U.S.C. § 3123(d)(2). As revealed, § 3123(d)'s nondisclosure provision uses practically the same language used in the nondisclosure order at dispute, yet that language differs markedly from § 2705(b)'s terms that a nondisclosure or-

---

**2.** The amended version of the SCA retains the prohibition by providing that a provider cannot "disclose to any person that the [FBI] has sought or obtained access to information or records," subject to a provision to notify an attorney to obtain legal advice or assistance regarding the request. 18 U.S.C. § 2709(c)(1)(A) & (c)(2)(A).

der may last for "such period as the court deems appropriate." By its terms, § 3123(d)(2) permits nondisclosure orders of indefinite duration, as the section does not suggest a time "period" of nondisclosure or even any requirements for a government showing as to the necessity for the order.

In contrast, § 2705(b) limits nondisclosure orders to an appropriate period designated by a court, and the government must demonstrate the necessity for the order by resort to the five circumstances listed thereunder. The juxtaposition of § 2705(b) with §§ 2709 and 3123(d)—in particular the absence in § 2705(b) of the terms used by § 3123(d)(2), "unless or until ordered by the court"—clearly indicates that Congress intended the establishment of a definite time horizon for § 2705(b) nondisclosure orders.

█ That Congress established these differing restrictions upon nondisclosure orders indicates the impropriety of § 2705(b) nondisclosure orders of indefinite duration. The information gleaned from pen registers and trap-and-trace devices—i.e., phone numbers called, time and date of transmissions, etc.—does not incite the privacy protections of the Fourth Amendment. *See Smith v. Maryland*, 442 U.S. 735, 744, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). Section 2709 permits nondisclosure orders in perpetuity because the FBI inquiry underlying the request involves matters of national security or counterintelligence. In contrast to those two provisions, the information subject to § 2705(b) nondisclosure orders garners broader privacy protections because the requests involve the content of electronic communications—such as emails, social media messages, etc.—in the context of law enforcement investigations that typically do not incite national security or counterintelligence concerns. Therefore,

§ 2705(b) provides a more limited, nondisclosure restriction.

Based on the foregoing considerations, the Court finds that § 2705(b) does not generally permit nondisclosure orders of indefinite duration.

## B. Nondisclosure Orders of Indefinite Duration Risk Violating the First Amendment

This interpretation of § 2705(b) manifests more decisively upon apprehension that nondisclosure orders of indefinite duration present a substantial risk of violating the First Amendment. Indeed, those courts finding that § 2705(b) permits nondisclosures of indefinite duration held that such orders violate the First Amendment and thus revised the orders accordingly. *See Matter of Search Warrant for [redacted].com*, 248 F.Supp.3d at 978-84, 2017 WL 1450314, at **5–10; *Microsoft Corp.*, 233 F.Supp.3d at 899–912; *see also In re Sealing and Non–Disclosure of Pen/Trap/2703(d) Orders*, 562 F.Supp.2d 876 (S.D. Tex. 2008) (holding that nondisclosure orders of indefinite duration violated the First Amendment and the common law right of public access to courts); *United States v. Apollomedia Corp.*, No. 99-20849, 2000 WL 34524449, *3 (5th Cir. June 2, 2000) ("substantial constitutional questions [are] raised by a nondisclosure order without any limitation as to time").

█ Based upon this risk to First Amendment rights, one should construe § 2705(b) to avoid an unconstitutional application of the statute. *See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988) ("where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the

intent of Congress.").[3] Because "Congress, like [the courts], is bound by and swears an oath to uphold the Constitution[,] [t]he courts will … not lightly assume that Congress intended to … usurp power constitutionally forbidden it." *Id.* at 575, 108 S.Ct. 1392. The Court may apply the constitutional avoidance doctrine to avoid "needlessly confronting" a difficult constitutional issue. *Id.*; *accord Bartlett v. Strickland*, 556 U.S. 1, 21, 129 S.Ct. 1231, 173 L.Ed.2d 173 (2009).

The Eleventh Circuit applies the strictures of the First Amendment to nondisclosure provisions similar to § 2705(b). As the Court held in *Cooper v. Dillon*, 403 F.3d 1208 (2005), the First Amendment maintains "our democratic polity" by reflecting "a desire for government accountability in the face of perceived abuses that ignited the movement toward the foundation of our country, … and this same desire subsequently inspired the Framers to guarantee the rights to speak, to publish, and to petition government …." *Id.* at 1214 (citations omitted). This objective "depends upon an informed citizenry to hold government officials accountable for error and abuse and to seek redress and change by lawful means." *Id.*

■■■ Nevertheless, the government may limit First Amendment free speech protections, subject to different levels of permissibility and scrutiny based upon the imposed restrictions. *Id.* "Because statutes silencing speech before it happens are inimical to the tenets of free expression underlying a free society, these statutes are characterized as prior restraints on speech and are subjected to strict scrutiny." *Id.* at 1214–15 (citing *Burk v. Augusta–Richmond County*, 365 F.3d 1247, 1251 (11th Cir. 2004)). Furthermore, "[b]ecause statutes representing governmental favoritism of preferred speech or suppression of disfavored speech are likewise antithetical to a free society, … content-based restrictions are also subjected to strict scrutiny." *Id.* at 1215 (citation omitted). To survive a strict scrutiny level of review, a government restriction on free speech protections must serve a compelling interest and be narrowly tailored in promoting such interest. *Id.* at 1216.

In *Cooper*, the appellee police officer arrested the appellant-plaintiff, a newspaper publisher and editor, after he wrote two articles discussing the existence of an internal investigation against another law enforcement officer and the deadline by which the appellee had to issue a report on the investigation. *Id.* at 1212. Notwithstanding the appellant's initiation of the inquiry by a filing a complaint with the appropriate state authorities, the appellee arrested the appellant pursuant to a Florida statute which criminalized participants in internal law enforcement investigations who disclosed any information *obtained during the investigation. Id.* at 1211. The information obtained during the investigation included the existence of the investigation and the deadline to complete the

3. *See also Panama Refining Co. v. Ryan*, 293 U.S. 388, 439, 55 S.Ct. 241, 79 L.Ed. 446 (1935)("[W]hen a statute is reasonably susceptible of two interpretations, by one of which it is unconstitutional and by the other valid, the court prefers the meaning that preserves to the meaning that destroys."); *United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 408, 29 S.Ct. 527, 53 L.Ed. 836 (1909) ("[W]here a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter."); *Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932) ("When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.").

inquiry. Based on these underlying circumstances, the Eleventh Circuit adjudged the constitutionality of the Florida statute's nondisclosure prohibitions pursuant to the First Amendment.

■ As the Court declared, "[c]ontent-based restrictions are found where the statute's prohibition is 'directed only at works with a specified content.'" *Id.* at 1215 (citation omitted). The Court held that the Florida statute, which was a non-disclosure provision akin to § 2705(b) because it prohibited participants from disclosing the existence of an investigation, constituted a content-based restriction on speech "because the purpose of the statute is to stifle speech of a particular content, namely, speech regarding pending investigations of law enforcement officers." *Id.* at 1216 (citation omitted).

■ *Cooper* applies directly to this case and compels a finding that a § 2705(b) order is a content-based speech restriction. Section 2705(b) exists to "stifle speech of a particular content, ... speech regarding pending investigations" by federal law enforcement entities. *Cooper,* 403 F.3d at 1216. Therefore, the nature of § 2705(b) commands a strict-scrutiny review for any application of the statute.

■ The Eleventh Circuit in *Cooper* did not rule that the Florida statute constituted a prior restraint on speech, yet the opposite inheres in this case. "A prior restraint ... does not exist where a [person] is faced with criminal sanctions for publishing certain information." *Id.* at 1215 (citing *Alexander v. United States,* 509 U.S. 544, 553–54, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993)). The *Cooper* plaintiff did not face a prior restraint of speech because he was able to publish his articles

before the imposition of the speech restriction; that is, "the statute did not silence [him] before he could speak." 403 F.3d at 1215, 1216.

■ In contrast, a disfavored "prior restraint on speech prohibits or censors speech before it can take place." *Id.* at 1215 (citing *Alexander,* 509 U.S. at 553, 113 S.Ct. 2766). "Classic prior restraints have involved judge-issued injunctions against the publication of certain information." *Cooper,* 403 F.3d at 1215 (citing *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 556–58, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976)). Most pertinent to the provisions in this case, "[t]he term prior restraint is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander,* 509 U.S. at 550, 113 S.Ct. 2766 (internal quotation marks omitted; emphasis omitted). "Temporary restraining orders and permanent injunctions—i.e., court orders that actually forbid speech activities—are classic examples of prior restraints." *Id.* (internal quotation marks omitted); *see also In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders,* 562 F.Supp.2d at 882 ("A prior restraint has traditionally been defined as a 'predetermined judicial prohibition restraining specified expression.'") (quoting *Bernard v. Gulf Oil Co.,* 619 F.2d 459, 467 (5th Cir. 1980) (*en banc*)[4]). The hallmarks of a prior restraint on speech manifest as follows:

> The distinguishing features of a prior restraint are (1) its judicial origin, although an enabling statute may authorize the order which "places specific communications under the personal cen-

4. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

sorship of the judge;" (2) the purpose is suppression rather than punishment; (3) the means of enforcement is the contempt power of the court, which is "more swiftly imposed and less subject to the mitigating safeguards of the criminal justice system;" and (4) the inability to assert constitutional invalidity as a defense in contempt proceedings.

*In re Sealing and Non–Disclosure of Pen/ Trap/2703(d) Orders,* 562 F.Supp.2d at 883 (quoting *Bernard,* 619 F.2d at 468–69).

■ Although the Florida statute at issue in *Cooper* was not a prior restraint on speech, § 2705(b)'s nondisclosure orders represent classic prior speech restraints. Section 2705 permits a court order forbidding certain speech in advance of utterance, in particular provider disclosure that the government has issued a search warrant, order, or subpoena seeking responsive information. Section 2705(b) orders exist to suppress disclosures, not punish providers, and any violation of a court order subjects the perpetrator to the contempt authority of the issuing court. Therefore, because § 2705(b) constitutes a prior restraint on speech and a content-based speech restriction, one must review § 2705(b) nondisclosure orders pursuant to the strict scrutiny standard.

■ In applying the standard, § 2705(b) presents a compelling interest for invocation of its nondisclosure orders. As recounted previously, courts may issue § 2705(b) orders when there is reason to believe that notification of a government warrant or other process will risk: someone's life or physical safety, a flight from prosecution, the destruction of or tampering with evidence, the intimidation of potential witnesses, or an investigation or trial commencement. These calamitous circumstances satisfy the compelling interest prong of the strict scrutiny analysis.

■ The particular order at issue, however, falters on the narrowly-tailored prong of strict scrutiny review. To be sure, *Cooper* did not review the Florida statute under the narrowly-tailored prong because it deemed the statute constitutionally deficient under the compelling interest prong. 403 F.3d at 1216 n. 5. Nevertheless, the Eleventh Circuit questioned whether the Florida statute was narrowly tailored:

> We note that while the statute is appropriately limited to participants, see *Landmark Communications, Inc.*; 435 U.S. at 837 & n. 10, 98 S.Ct. 1535, applicable only to information gleaned pursuant to the investigation, *see Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 34, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), and lasts for a presumptively definite duration, *see Butterworth v. Smith,* 494 U.S. 624, 632, 110 S.Ct. 1376, 108 L.Ed.2d 572 (1990), there is some question as to whether the statute is narrowly tailored because it may permit an indefinite ban on disclosure.

*Id.* As the Court discerned, the statute may result in a "permanent restriction" on disclosing information obtained during an investigation because an investigation may continue beyond the presumptive 45–day period set forth in the provisions. *Id.* Although the Court declined to review whether the risk of a permanent restriction violated the narrowly-tailored prong of strict scrutiny, it acknowledged that a statute may not be narrowly tailored if it permits "an indefinite ban on disclosure" of information obtained during an investigation.

Based upon the guidance in *Cooper,* the undersigned finds that an order restricting speech "unless and until otherwise authorized" by the Court establishes a limitation on speech in perpetuity. There exists a substantial risk that nondisclosure orders with such terms will languish indefinitely

until the courthouse permanently closes its doors. Indeed, one court determined upon its study in the Southern District of Texas, Houston Division, for the period 1995 to 2007, "out of 3886 orders sealed 'until further order of the court,' 99.7% remain[ed] under seal" as of the Court's 2008 opinion, "many years after issuance" of the nondisclosure orders. *In re Sealing and Non–Disclosure of Pen/Trap/2703(d) Orders*, 562 F.Supp.2d at 878. Nondisclosure orders contemplating periods of indefinite duration are not narrowly-tailored, and therefore courts should not interpret § 2705(b) to permit such orders except in the narrowest of circumstances upon a proper government showing.

The Government proffers three primary arguments against a finding that a nondisclosure order of indefinite duration substantially risks violating the First Amendment. First, the Government argues the Court should subject the First Amendment analysis to a degree of scrutiny lower than strict scrutiny. The Eleventh Circuit's *Cooper* decision forecloses such a finding in this case. As discussed previously, the applicable standards demonstrate that § 2705(b) constitutes a content-based speech restriction as well as a prior restraint on speech, and therefore strict scrutiny review applies.

In its arguments regarding the appropriate level of scrutiny, the Government also argues that litigation-related activities—of which it deems an § 2705(b) order—deserve a lower level of scrutiny than investigation-related activities, in which it places the facts of *Cooper*. As an initial rejoinder, the undersigned acknowledges that *Cooper* distinguished information discovered during an administrative investigation from information discovered during litigation such as grand jury or civil suit proceedings. *See Cooper*, 403 F.3d at 1217 (citing *Butterworth v. Smith*, 494 U.S. 624,

110 S.Ct. 1376, 108 L.Ed.2d 572 (1990) (suggesting that the function historically served by grand jury proceedings distinguishes them from other proceedings); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) (noting the difference between disclosing information obtained through discovery and disclosing information learned in a nontrial context)). Nonetheless, the Court discussed the distinction as it applied the *compelling-interest prong* of the strict scrutiny analysis, and the Court readily discerned that the confidentiality of litigation-related information and activities serves a compelling governmental interest whereas confidentiality would not in the investigation context. *Cooper*, 403 F.3d at 1217–18. As the undersigned ruled previously, the Government satisfied the compelling interest prong of the strict scrutiny analysis in this case, so there exists no quarrel with the Government's distinction. The rub arises in the narrowly-tailored prong of the inquiry.

Along the same lines as the afore-mentioned arguments, the Government seeks a lower level of scrutiny on the basis that Google obtained the information subject to the nondisclosure Order by virtue of the search warrant; it did not possess the information prior to execution of the warrant. The Supreme Court has acknowledged such a distinction in other cases balancing First Amendment rights with nondisclosure or confidentiality rules. *See Butterworth*, 494 U.S. 624, 110 S.Ct. 1376, 108 L.Ed.2d 572 (finding Florida statute prohibiting witness from disclosing his own testimony after grand jury's term, which he possessed prior to testifying, violates First Amendment); *Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199 (finding that a protective order prohibiting a newspaper from publishing information it obtained through discovery procedures did not violate the First Amendment). However, as discussed previ-

ously *Cooper* involved a statute's prohibition on disclosing information *obtained during an investigation*, and the Eleventh Circuit, while discussing *Butterworth* and *Rhinehart*, ruled that the statute violated the First Amendment nonetheless. *Cooper*, 403 F.3d at 1217–18.

The same result inheres in this case. Unlike the information at issue in *Butterworth* and *Rhinehart*—the content of civil discovery practice and the testimony rendered during a grand jury proceeding— § 2705(b) prevents Google from disclosing the existence of the particular investigation at issue. One presumes Google has no interest in disclosing the contents of its targeted-subscribers electronic communication to the wider public; indeed, § 2702 of the SCA prohibits it from doing so, and no doubt its customer agreements contain such restrictions as well. For that matter, Google may only have a minor interest in informing the targeted subscriber about the investigation.

However, Google and other internet providers maintain an interest in publicizing the extent to which the Government invades the privacy of internet users via search warrants and other devices.[5] Setting aside any normative considerations regarding the providers' *cause célèbre* as it pertains to criminal investigations, such campaigns represent the mainstay of speech garnering First Amendment protection. *See Cooper*, 403 F.3d at 1214 ("First Amendment freedoms are also understood to be essential to the maintenance of our democratic polity, which depends upon an informed citizenry to hold government officials accountable for error

and abuse and to seek redress and change by lawful means.") (citing *Garrison v. Louisiana*, 379 U.S. 64, 74–75, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964) ("[S]peech concerning public affairs is more than self-expression; it is the essence of self-government.")); *Stromberg v. California*, 283 U.S. 359, 369, 51 S.Ct. 532, 75 L.Ed. 1117 (1931); *see also Cooper, id.* at 1214 ("Indeed, it was a desire for government accountability in the face of perceived abuses that ignited the movement toward the foundation of our country, ... and this same desire subsequently inspired the Framers to guarantee the rights to speak, to publish, and to petition government.") (citing The Declaration of Independence para. 30 (U.S. 1776); *Whitney v. California*, 274 U.S. 357, 375, 47 S.Ct. 641, 71 L.Ed. 1095 (1927) (Brandeis, J., concurring) (noting that the Framers believed that "the path of safety lies in the opportunity to discuss freely supposed grievances"), *overruled on other grounds, Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969)). "[I]t has been universally recognized that one of the primary purposes of the First Amendment is to 'protect the free discussion of governmental affairs' because the maintenance of a responsible democratic government depends upon it." *Cooper*, 403 F.3d at 1214 (quoting *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 838, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978); citing *Wood v. Georgia*, 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962) (noting that the "purpose of the First Amendment includes the need: ... to protect parties in the free publication of matters of public concern, [including] ... any just criticism upon

---

**5.** *See, e.g.,* Declan McCullagh, *DOJ: We Don't Need Warrants for E–Mail, Facebook Chats*, CNET.com (May 8, 2013, 7:00 AM PDT), https://www.cnet.com/news/dof-we-dont-need-warrants-for-e-mail-facebook-chats ("A phalanx of companies, including Amazon, Apple, AT & T, eBay, Google, Intel, Microsoft, and

Twitter, as well as liberal, conservative, and libertarian advocacy groups, have asked Congress to update ECPA to make it clear that law enforcement needs a warrant to access private communications and the locations of mobile devices.").

[government officials'] conduct in the exercise of the authority which the people have conferred upon them")). Therefore, Google's interest in disclosing the Government's efforts incites core First Amendment protections.

In any event, the undersigned discerns no different result in applying a lower level of scrutiny. The inquiry involves whether § 2705(b) nondisclosure orders "[furthers an important or substantial governmental interest unrelated to the suppression of expression and whether the limitation of First Amendment freedoms is no greater than is necessary or essential to the protection of the particular governmental interest involved." *Rhinehart*, 467 U.S. at 32, 104 S.Ct. 2199. Nondisclosure orders of indefinite duration risk substantially failing the second prong of this lower scrutiny: generally, orders with a definite period of duration would suffice to protect the Government's interest in the circumstances listed in § 2705(b)(1)–(5). Indefinite-duration nondisclosure orders extend beyond the time normally necessary or essential to protect those interests.

As the foregoing analysis portrays, regardless of the proper resolution of the First Amendment issue incited by nondisclosure orders of indefinite duration, the constitutional avoidance doctrine commands a statutory interpretation that reduces the risks of an unconstitutional assessment. The undersigned cannot comprehend Congress risking a First Amendment violation by promulgating § 2705(b) as generally permitting nondisclosure orders of indefinite duration.

In the case at bar, the Court's review of the warrant application does not indicate the necessity for a nondisclosure order of indefinite duration. Section 2705(a) permits non-notice to subscribers of 90 days, with the possibility of extensions. Pen/trap orders subject providers to a standard non-disclosure period of 60 days, with the opportunity for an extension not to exceed an additional 60 days. 18 U.S.C. § 3123(c). The Court deems 180 days a reasonable period of time for most, standard § 2705(b) orders. *See In re Sealing and Non–Disclosure of Pen/Trap/2703(d) Orders*, 562 F.Supp.2d at 895 (establishing 180 days as the period for a § 2705(b) nondisclosure order); *Matter of Search Warrant for [redacted].com*, 248 F.Supp.3d at 983, 2017 WL 1450314, at *10 (same). The Government may apply for an extension of the 180–day period on or before expiration of the Order, and the Court will consider such an extension along with any additional extensions upon a proper showing of the circumstances provided in § 2705(b).

In certain circumstances, the Government will need an order of longer duration, and in rare circumstances, an order of indefinite duration. Those circumstances do not present themselves in this case, and therefore the undersigned declines to address their contours in the abstract.

## CONCLUSION

Therefore, based on the foregoing analysis, the Court **ORDERS** a 180–day period of nondisclosure for the Government's warrant from die entry date of this Order. If the Government desires an extension of the nondisclosure period, it must petition the Court for such an extension on or before expiration of the 180–day period. If the Government files an application for the extension, the nondisclosure period continues until the Court rules upon the application.