*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-SS-1024

FACEBOOK, INC., APPELLANT,

V.

JAMES PEPE, APPELLEE,

AND

UNITED STATES, INTERVENOR.

Appeal from the Superior Court
of the District of Columbia
(CF1-18581-18)

(Hon. Juliet McKenna, Trial Judge)

(Argued January 14, 2020　　　　　　　　　Decided　　　　　　　)

*Joshua S. Lipshutz*, with whom *Naima L. Farrell*, *Aaron Smith*, *John K. Roche*, *Ariel Glickman*, *Michael J. Holecek*, of the bar of the State of California, *pro hac vice*, by special leave of the court, and *Thomas F. Cochrane*, of the bar of the State of California, *pro hac vice*, by special leave of the court, were on the brief, for appellant.

*William Collins*, Public Defender Service, with whom *Samia Fam*, *Mikel-Meredith Weidman*, and *Jaclyn S. Frankfurt*, Public Defender Service, were on the brief, for appellee.

*Andrew W. Laing*, Attorney, Appellate Section, Criminal Division, United States Department of Justice, with whom *Brian A. Benczkowski*, Assistant Attorney General, *John P. Cronan*, Principal Deputy Assistant Attorney General, *Matthew S.*

*Miner*, Deputy Assistant Attorney General, Criminal Division, United States Department of Justice, and *Nathan P. Judish*, Attorney, Computer Crime and Intellectual Property Section, Criminal Division, United States Department of Justice, were on the brief, for intervenor.

Before GLICKMAN and FISHER, *Associate Judges*, and NEBEKER, *Senior Judge*.

GLICKMAN, *Associate Judge*: Appellant Facebook, Inc. (Facebook) filed an expedited appeal from an order holding it in civil contempt for refusing to comply with an *ex parte* subpoena served by appellee James Pepe, and from a related order directing Facebook not to disclose the existence of the subpoena to any person or entity other than its counsel until it complied with the subpoena. We issued a Judgment on January 16, 2020, that affirmed the order holding Facebook in contempt, but vacated the nondisclosure order. This opinion explains those rulings.

## I.

Mr. Pepe's subpoena sought evidence from Facebook supporting his defense to then-pending criminal charges arising out of the shooting of Marquette Brown on December 6, 2018. Mr. Pepe claimed he shot in self-defense after Mr. Brown and his associates, who had been threatening him, surrounded him on an A6 bus and pursued him when he got off and tried to walk away from them. Shortly before this

encounter, Brown allegedly sent Pepe a disappearing Instagram "Story"[1] in which Brown menacingly bragged that he had been carrying a weapon during one of their previous confrontations and warned Pepe not to ride the A6 bus.  Mr. Pepe had not preserved and no longer possessed this Story.  It was not included in the voluminous records that Facebook had produced to the government from Mr. Pepe's Instagram account in response to a search warrant (which records the government turned over to Mr. Pepe in pretrial discovery).

In an effort to obtain the evanescent Instagram Story and other potentially helpful evidence of Brown's threats, Mr. Pepe asked the Superior Court to authorize an *ex parte* subpoena to Facebook under Superior Court Criminal Rule 17(c).[2]  The subpoena sought (1) communications from Brown's Instagram account to Pepe's

---

[1]  Instagram is a photo- and video-sharing platform owned by Facebook, on which users may send another user a photo or video "Story" that is accessible on the Instagram platform to both sender and recipient for twenty-four hours, after which it disappears, unless either the sender or the recipient acts to save it.  *See* Instagram Help Center, "When does my Instagram story disappear?", available at https://help.instagram.com/1729008150678239?helpref=uf_permalink https://perma.cc/2Z8N-PHDD  (last accessed Mar. 24, 2020).

[2]  As we understand Facebook's counsel to have clarified at oral argument, a Story that has expired from both the sender's and the recipient's platform may still be archived by Instagram within the sender's account and therefore be producible by Facebook even if it is inaccessible to the sender.

account,[3] and (2) non-content information pertaining to Brown's account, such as message headers identifying other Instagram accounts with which Brown had communicated around the time of the shooting. The trial court approved the *ex parte* subpoena and found that "exceptional circumstances" existed to dispense with requiring notice of the subpoena to Brown.[4]

Facebook moved to quash the subpoena. It principally contended that the subpoena was unenforceable because the requested records were subject to the privacy protections of the Stored Communications Act (SCA).[5] After a hearing, the trial court denied the motion. The court ruled that the requested records fell within statutory exceptions to the SCA's prohibitions on disclosure of electronic records and the contents of electronic communications, and that the SCA did not empower Facebook to defy an otherwise lawful subpoena for such excepted information.

---

[3] The subpoena did not mention the Instagram Story specifically.

[4] When a Rule 17 subpoena "requir[es] the production of personal or confidential information about a victim[,] . . . unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object." Super. Ct. Crim. R. 17(c)(3).

[5] 18 U.S.C. §§ 2701-13 (2018).

Facebook also requested the court's permission to disclose the existence of the *ex parte* subpoena to the government or Mr. Brown so it could explore whether the requested information could be procured without the subpoena – for example, if the government were to obtain a warrant for the information and thereafter produce it to Mr. Pepe. Mr. Pepe opposed this request, and the trial court ultimately rejected it and ordered Facebook not to disclose the subpoena to any person or entity (other than its counsel) until it had complied with the subpoena. The court concluded that this restraint on disclosure was justified under Criminal Rule 17(c)(3) to prevent loss or destruction of the requested evidence and to protect Mr. Pepe from the premature disclosure of his defense investigation and strategy, and that it did not violate the First Amendment.[6]

Facebook did not comply with the subpoena by the deadline imposed by the court. The court accordingly held it in civil contempt and stayed the monetary sanctions it imposed pending Facebook's expedited appeal.[7]

---

[6] Before the court held Facebook in civil contempt for its non-compliance with the subpoena, Facebook took an interlocutory appeal from the non-disclosure order. This court dismissed that appeal for lack of jurisdiction on the grounds that it was not from a final order and did not meet the requirements of the collateral order doctrine. *See In re Facebook, Inc.*, No. 19-SS-761, Order (D.C. Oct. 23, 2019).

[7] The United States intervened in this appeal at this court's invitation because Mr. Pepe argued that the SCA is unconstitutional if it requires or permits Facebook

Our January 16, 2020 Judgment in this appeal upheld the subpoena and affirmed the adjudication of civil contempt. We agreed with the trial court, Mr. Pepe, and the United States that the SCA neither required nor authorized Facebook's refusal to comply with the subpoena. However, we vacated the nondisclosure order.[8] Given Facebook's unrebutted representation that it had secured any requested communications and records in its possession, we were not persuaded the nondisclosure order was justified by a need to preserve the records or by Mr. Pepe's confidentiality concerns.

## II. Enforceability of the Subpoena

As a provider of electronic communication services, Facebook must comply with the provisions of the SCA governing its disclosure of customer communications and records. The provision of the SCA applicable to this case, 18 U.S.C. § 2702, contains a prohibition on disclosure and exceptions to that prohibition. Subsection (a) states that "[e]xcept as provided in subsection (b) or (c)," service providers "shall

---

to defy a criminal defendant's Rule 17 subpoena for evidence material to the defense. *See* D.C. App. R. 44(a). In view of our disposition of the appeal on statutory grounds, we do not reach Mr. Pepe's constitutional claim.

[8] Our vacatur of the nondisclosure order was effective immediately, ahead of the new date we set for Facebook to comply with the subpoena or begin suffering the sanctions imposed for its contempt.

not knowingly divulge to any person or entity the contents" of electronically stored communications or "to any governmental entity" "record[s] or other information pertaining to a subscriber [] or customer" (i.e., records that are not communications). If one of the exceptions listed in subsections (b) and (c) applies, the provider "may divulge" the communication, record, or information at issue.[9]

In *Facebook v. Wint*[10] we held that where no statutory exception applies, § 2702(a) prohibits a service provider from complying with a criminal defendant's subpoena for covered communications and records. In other words, the SCA renders that subpoena unenforceable against the provider. Our opinion left unanswered the question whether the SCA similarly precludes a criminal defendant from subpoenaing material that falls within one of § 2702's exceptions. That is the question posed in the present case. Mr. Pepe contends the SCA is no obstacle to the enforcement of his subpoena, because exceptions in subsections (b) and (c) of § 2702 specifically allow a provider like Facebook to divulge (1) the contents of a covered communication to, or with the consent of, "an addressee or intended recipient of

---

[9]  18 U.S.C. §§ 2702(b), (c).

[10]  199 A.3d 625 (D.C. 2019).

such communication,"[11] and (2) customer records and information other than a covered communication "to any person other than a governmental entity."[12]

In opposing Mr. Pepe's invocation of these exceptions, Facebook makes two principal arguments. First, it argues that Mr. Pepe is not "an addressee or intended recipient" of an Instagram communication that has, by design, automatically expired and disappeared from his account. Second, Facebook argues that even if subsections (b)(1), (b)(3), and (c)(6) permit it to divulge the requested communications and records to Mr. Pepe, it cannot be compelled to do so by his subpoena because the SCA preempts such compulsory discovery and commits the disclosure decision in cases like this to the service provider's unfettered discretion. Each of these arguments presents a question of statutory interpretation as to which our review is *de novo*.[13] As we stated in construing the SCA in *Wint*,

> We first look to see whether the statutory language at issue is "plain and admits of no more than one meaning." *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (en banc) (internal quotation

---

[11]  18 U.S.C. §§ 2702(b)(1), (b)(3).

[12]  *Id.* § 2702(c)(6). Governmental access to customer communications or records by warrant, subpoena, or court order is addressed separately in § 2703 of the SCA.

[13]  *Wint*, 199 A.3d at 628.

marks omitted). We will give effect to the plain meaning of a statute "when the language is unambiguous and does not produce an absurd result." *McNeely v. United States*, 874 A.2d 371, 387 (D.C. 2005) (internal quotation marks omitted). "[W]e may also look to the legislative history to ensure that our interpretation is consistent with legislative intent." *Thomas v. Buckley*, 176 A.3d 1277, 1281 (D.C. 2017) (internal quotation marks omitted).[14]

For the following reasons, we reject both arguments and conclude that the SCA does not render Mr. Pepe's subpoena unenforceable.[15]

---

[14] *Id.*

[15] Facebook also makes a non-statutory argument. It contends the subsection (b) exceptions are inapplicable because Mr. Pepe has provided no evidence that he is the holder of the Instagram account that allegedly received messages from Mr. Brown's account, or that he ever received communications from Brown. On the record before us, however, Mr. Pepe's status as an account holder and recipient is not in reasonable dispute. The trial court found him to be the account holder based on the sworn evidence presented by the government to obtain the warrant for his Instagram records, and the warrant yielded numerous communications between Pepe and Brown. Service providers often "rely on law enforcement certification under oath" that factual assertions underlying government requests for covered records or communications are "true and accurate," and their good faith reliance on those assertions relieves them of liability under the SCA. *United States v. Caraballo*, 963 F. Supp. 2d 341, 349 (D. Vt. 2013), *aff'd*, 831 F.3d 95 (2d Cir. 2016); *see also Alexander v. Verizon Wireless Servs., LLC*, 875 F.3d 243, 254 (5th Cir. 2017). We see no reason why providers would cease to rely on the same law enforcement certification when a criminal defendant uses it to seek similar information.

## A. Mr. Pepe's Status as an "Addressee or Intended Recipient"

Facebook argues that Mr. Pepe cannot be considered an "addressee or intended recipient" of Instagram messages that have expired and disappeared from view on his Instagram platform after twenty-four hours. According to Facebook, a sender's use of such an ephemeral format implies the sender meant to limit the receiver's continued access to the message and makes the receiver only a *former* addressee or intended recipient of the message once it has disappeared. Taken to its logical conclusion, Facebook's position is that a receiver must have *current* access to a communication when seeking its disclosure in order to be deemed an "addressee or intended recipient" of it within the meaning of §§ 2702(b)(1) and (b)(3). Mr. Pepe disagrees, arguing that the plain meaning of "addressee or intended recipient" does not turn on how long the sender wanted the communication to remain available for viewing or whether it in fact remains accessible to the receiver. We agree with Mr. Pepe.

The SCA does not define or qualify the meaning of an "addressee or intended recipient" of an electronic communication. "When the terms of a statute are undefined and not recognized terms of art, we presumptively accord them their

ordinary meaning in common usage, taking into account the context in which they are employed[.]"[16] Facebook has not rebutted that presumption in this case.

In the ordinary sense of the term, being an "addressee or intended recipient" of a communication is not linked in any way to how long the receiver continues or is intended to possess it. In general, an "addressee" is simply "one to whom something is addressed," and to "address" is simply "to direct to go to" or "to direct by way of communication."[17] The status of addressee arises at the time of sending an addressed item, and this status is not altered by what happens to the item thereafter, or by what the sender wanted or expected to happen thereafter. We would not say, for example, that someone ceased to be the addressee of a letter that was deposited in the mail if the letter was lost in transit or thrown away after receipt. Similarly, an "intended recipient" is simply "one that receives," that is, "take[s] possession or delivery of," as the sender had "in mind" or in accordance with the sender's plans or "designs."[18] The status of intended recipient does not depend on whether the recipient keeps the communication or whether the sender intended that

---

[16] *Hood v. United States*, 28 A.3d 553, 559 (D.C. 2011).

[17] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE, UNABRIDGED 24, 25 (1993).

[18] *Id.* 1175, 1894, 1895 (defining "intended" and "recipient").

it be preserved. For example, a person need not record a phone call in order to be deemed its intended recipient. Absent any indication to the contrary, the plain and most natural reading of the term "addressee or intended recipient" in § 2702 is that it includes people who receive electronic messages that expire at some point after receipt.

Indeed, the (b)(1) and (b)(3) exceptions would serve little purpose and be virtually superfluous if they permitted Facebook to disclose electronic communications only to, or with the consent of, people who still have the communications. Facebook's disclosure is unnecessary for those individuals to obtain or consent to share communications they already control. The (b)(1) and (b)(3) exceptions are useful when a receiver did *not* retain possession of, or access to, a desired electronic communication.

That the sender may have intended a communication to disappear by sending it in an ephemeral format thus has no bearing on whether the receiver is, in plain language and with regard to the purposes of the exception, an "addressee or intended recipient" of that communication. This conclusion does not undermine senders' reasonable privacy expectations created by the SCA. The SCA itself limits such expectations by allowing service providers to divulge electronic communications to

addressees or intended recipients, or to *anyone* else with their consent, *without* sender authorization. And of course the SCA contains no special provision for communications that are designed to self-delete; as Facebook acknowledges, the development of such evanescent messages was not envisioned when Congress enacted the SCA in 1986.[19] In point of fact, the automatic expiration of an Instagram Story merely removes it from the recipient's and the sender's Instagram platform; it does not prevent a receiver from preserving it before its deletion by downloading or other means.[20] The sender of a Story cannot prevent its preservation. Thus, if anything, the sender's consent to the receiver's continued access to the message is implied by the sender's decision to send it.[21] Mr. Brown had no reasonable assurance that a Story he sent to Mr. Pepe would disappear for good.

---

[19] We have found nothing in the legislative history of the SCA indicating that "addressee or intended recipient" should be understood to exclude persons who receive disappearing electronic messages or messages that the sender intended to be destroyed or not disclosed.

[20] Instagram's Data Policy, available to its users, specifically states that "when you share a post or send a message to specific friends or accounts, they can download, screenshot, or reshare that content to others across or off our Products, in person or in virtual reality[.]" Instagram Help Center, "Data Policy: Content others share or reshare about you," available at https://help.instagram.com/155833707900388 https://perma.cc/D554-J6EL (last accessed Mar. 24, 2020).

[21] In enacting the SCA, Congress envisioned that "[i]f conditions governing disclosure or use are spelled out in the rules of an electronic communication service, and those rules are available to users . . . it would be appropriate to imply consent

We hold that under §§ 2702(b)(1) and (b)(3), Mr. Pepe is an "addressee or intended recipient" of any communications sent to his account, and those exceptions therefore permit Facebook to disclose all such communications to Pepe, including any Instagram Stories, that are responsive to his subpoena.

## B.  The Enforceability of a Subpoena for Information the SCA Permits Facebook to Divulge

Facebook contends that even if §§ 2702(b)(1), (b)(3), and (c)(6) permit it to divulge the communications and records sought by Mr. Pepe, the SCA preempts his ability to obtain that information from it by subpoena.  The SCA does not do so expressly, but Facebook asserts that it does so implicitly because allowing such use of compulsory process would create "an obstacle to the accomplishment and execution of the full purposes of and objectives of Congress"[22] in enacting the SCA. According to Facebook, the permissive exceptions in the SCA leave disclosure entirely to the service provider's unfettered discretion in order to channel discovery to other entities, such as users who can assert their own privacy interests in the communications and records at issue.  In effect, Facebook argues that Congress

---

on the part of a user to disclosures or uses consistent with those rules."  H.R. Rep. No. 99-647, at 66 (1986) (hereinafter "House Report").

[22] *Murray v. Motorola, Inc.*, 982 A.2d 764, 771 (D.C. 2009) (quotation and alteration omitted).

intended the SCA to create an absolute service provider discovery privilege whenever the SCA does not specifically require a service provider to permit discovery.

As the Supreme Court has emphasized, "preemption cannot be based on a freewheeling judicial inquiry into whether a state [rule] is in tension with federal objectives."[23] For Facebook's implicit preemption argument to succeed, it "must be grounded 'in the text and structure of the statute at issue.'"[24] We conclude that the necessary grounding is lacking.

There is, to begin with, a weighty and well-settled presumption *against* inferring that Congress silently intended to foreclose or restrict the availability of a core component of the judicial process such as the subpoena power. As we reiterated in *Wint*,

> [I]t is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense[.] . . . [E]xceptions to the demand for every man's evidence are

---

[23] *Kansas v. Garcia*, 140 S. Ct. 791, 801 (2020) (internal punctuation omitted, quoting *Chamber of Commerce v. Whiting*, 563 U.S. 582, 607 (2011)).

[24] *Id.* at 804 (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)).

not lightly created nor expansively construed, for they are in derogation of the search for truth.[25]

Thus, a "clear and strong indication" of Congressional intent "is required before it may be implied that the policy of prohibition is of such force as to dominate the broad objective of doing justice" by preempting the ordinary rules of discovery in the judicial process.[26]

Such clear intent exists for us to conclude that when § 2702(a)'s general prohibition on disclosure is applicable, it precludes a provider from complying with a criminal defendant's subpoena; we so held in *Wint*, as have other courts.[27] But when the (b)(1), (b)(3), and (c)(6) exceptions to the prohibition apply and expressly

---

[25] *Wint*, 199 A.3d at 632 (quoting *United States v. Nixon*, 418 U.S. 683, 709-10 (1974)).

[26] *Id.* (quoting *Freeman v. Seligson*, 405 F.2d 1326, 1348 (D.C. Cir. 1968); *see also Facebook v. Superior Court (Hunter)*, 417 P.3d 725, 751 (Cal. 2018) ("[T]here should be a clear expression of congressional intent before relevant information essential to the fair resolution of a lawsuit will be deemed absolutely and categorically exempt from discovery and not subject to the powers of the court[.]"); c*f. Ajemian v. Yahoo!, Inc.*, 84 N.E.3d 766, 774-78 (Mass. 2017) (holding that absent "clear congressional intent" to preempt an "'area[] of traditional State regulation,'" § 2702(a) of the SCA did not preempt state probate law allowing personal representatives to consent to release of information on behalf of decedent) (citing *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 151 (2001)).

[27] *See Wint*, 199 A.3d at 628-29.

permit disclosure, they remove that barrier to subpoena compliance and *enable* service providers to comply with compulsory process. The subsections do not purport to authorize providers to refuse to do so at their own option, let alone to vest them with a novel privilege to withhold evidence from discovery for any or no reason.

Facebook argues that subsections (b) and (c) state that providers "may divulge" information under certain conditions, and that "the permissive 'may' rather than the imperative 'shall'"[28] indicates that the decision to divulge is discretionary. This assertion is too sweeping. As the California Supreme Court has explained

> the subdivision[s] [in § 2702] where 'may' appears [are] framed not as a grant of discretionary power . . . but as a special *exception* to a general *prohibition*. In such a context all 'may' means is that the actor is excused from a duty, liability, or disability otherwise imposed by the prohibition.[29]

---

[28] *Cruz v. United States*, 165 A.3d 290, 293 (D.C. 2017).

[29] *Hunter*, 417 P.3d at 751 (emphasis in the original; internal quotation marks omitted) (holding that § 2702 does not give electronic service providers discretion to defy otherwise lawful subpoenas from criminal defendants where an exception in § 2702 permits the disclosure of the subpoenaed materials).

Indeed, underscoring that point, some of the excepted circumstances in which subsections (b) and (c) say a provider "may divulge" information are, in fact, circumstances in which the provider *must* divulge it.[30]

And "while 'may' suggests discretion, it does not necessarily suggest unlimited discretion."[31] That the SCA grants providers certain exemptions from *its* general prohibition on disclosure does not imply that it grants providers exemptions from mandatory disclosure requirements imposed by other law. Although the SCA preempts other disclosure laws to the extent they would require providers to *violate* the SCA, that is no reason to think the SCA also preempts laws that require disclosures the SCA expressly *permits*.[32] When the SCA lifts the bar on disclosure of electronic communications in § 2702(a) and explicitly permits providers to disclose information, the requisite indication of congressional intent to preclude

---

[30] *E.g.*, 18 U.S.C. §§ 2702(b)(2) and (c)(1) (referencing mandatory disclosures to governmental entities pursuant to warrants or other means specified in § 2703); §§ 2702(b)(6) and (c)(5) (referencing mandatory reporting to the National Center for Missing and Exploited Children).

[31] *Zadvydas v. Davis*, 533 U.S. 678, 697 (2001).

[32] *See Hunter*, 417 P.3d at 751.

compulsory process is absent. It does not appear in the statutory text, and we have not found it in the legislative history of the SCA.[33]

Accordingly, we hold that the SCA did not authorize Facebook's refusal to comply with Mr. Pepe's subpoena for information that SCA §§ 2702(b)(1), (b)(3), and (c)(6) allowed Facebook to divulge to him. Our conclusion accords with the substantial weight of authority from other jurisdictions.[34] While a few courts have

---

[33] House Report, at 64-67; S. Rep. No. 99-451, at 36-38 (1986).

[34] *See, e.g.*, *Hunter*, 417 P.3d at 751; *Negro v. Superior Court*, 179 Cal. Rptr. 3d 215, 230-34 (Cal. Ct. App. 2014); *O'Grady v. Superior Court*, 44 Cal. Rptr. 3d 72, 88 (Cal. Ct. App. 2006) (in holding that civil subpoena for contents of communications violated the SCA, noting "[c]opies may still be sought from the [service provider] if the discovery can be brought within one of the statutory exceptions—most obviously, a disclosure with the consent of a party to the communication"); *Mafille v. Kaiser-Francis Oil Co.*, No. 18-CV-586-TCK-FHM, 2019 WL 1933747, at *4 (N.D. Okla. May 1, 2019) (civil subpoena to Google did not violate the SCA where the plaintiff could consent to disclosure under § 2702(b)(3)); *Super Vitaminas, S.A.*, No. 17-mc-80125-SVK, 2017 WL 5571037, at *3-4 (N.D. Cal. Nov. 20, 2017) (civil subpoena to provider for email contents between litigant and third party did not violate the SCA where litigants were recipients of the emails and consented to the disclosure of the contents thereof because "the exception provided [under § 2702(b)(3)] for disclosure applies"); *Lee v. Glob. Tel*Link Corp.*, No. CV15-2495-ODW(PLAx), 2017 WL 10575166, at *7 (C.D. Cal. Sept. 6, 2017) (in holding that provider could disclose customer information to litigant under § 2702(c)(6), stating, "the Court is not aware of[] any case holding that a federally-recognized privilege exists that prohibits a telephone company from disclosing customer information"); *Al Noaimi v. Zaid*, No. 11–1156–EFM, 2012 WL 4758048, at *3 (D. Kan. Oct. 5, 2012) (denying motion to quash subpoena to service provider where plaintiff could consent to disclosure of his own requested email communications under § 2702(b)(3)); *Two Rivers Fin. Grp., Inc. v.*

held or, in dicta, suggested otherwise,[35] their opinions do not rebut our reasoning

and we do not find them persuasive.

---

*Ralston*, No. 3:11-cv-00152-CRW-CFB, 2012 WL 13018842, at *2 (S.D. Iowa July 9, 2012) (ordering provider to comply with defendant's subpoena for her own email communications, as "18 U.S.C. § 2702(b)(1) . . . does allow the disclosure of the . . . communication to 'the addressee or intended recipient of such communication . . . '"); *Columbia Pictures Indus., Inc. v. Fung*, No. CV 06-5578 SVW(JCx), 2007 WL 9627899, at *4 (C.D. Cal. May 31, 2007) ("[A]s the court has ordered the production of essentially only those private forum messages to which defendants or their agents are privy because they are a party or participant thereto, and as defendants have the ability to consent to the disclosure thereof, the Stored Communications Act does not provide a basis to withhold such data which is clearly within defendants' possession, custody and control.").

Courts are particularly uniform in demanding that service providers comply with subpoenas for information that falls within the § 2702(c)(6) exception for non-content information. *See, e.g.*, *CineTel Films, Inc. v. Does 1-1,052*, 853 F. Supp. 2d 545, 555 n.5 (D. Md. 2012); *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 247 (N.D. Ill. 2011); *Viacom Int'l Inc. v. YouTube Inc.*, 253 F.R.D. 256, 265 (S.D.N.Y. 2008); *Sines v. Kessler*, No. 18-mc-80080-JCS, 2018 WL 3730434, at *10-11 (N.D. Cal. Aug. 6, 2018); *Haw. Reg'l Council of Carpenters v. Yoshimura*, No. 16-00198 ACK-KSC, 2017 WL 738554, at *3-4 (D. Haw. Feb. 17, 2017); *Site B, LLC v. Does 1-51*, No. 13 C 5295, 2014 WL 902688, at *4 (N.D. Ill. Mar. 7, 2014); *TCYK, LLC v. Does 1-87*, No. 13 C 3845, 2013 WL 5567772, at *3 (N.D. Ill. Oct. 9, 2013).

[35] *See United States v. Wenk*, 319 F. Supp. 3d 828, 829 (E.D. Va. 2017); *PPG Indus., Inc. v. Jiangsu Tie Mao Glass Co.*, 273 F. Supp. 3d 558, 561 (W.D. Pa. 2017); *State v. Johnson*, 538 S.W.3d 32, 69-70 (Tenn. Crim. App. 2017); *In re Facebook*, 923 F. Supp. 2d 1204, 1206 (N.D. Cal. 2012); *Schweickert v. Hunts Point Ventures, Inc.*, No. 13-CV-675RSM, 2014 WL 6886630, at *13 (W.D. Wash. Dec. 4, 2014).

### III. The Nondisclosure Order

### A. Background

At the hearing in the trial court on its motion to quash Mr. Pepe's subpoena, Facebook's counsel asked the court to defer ruling on the issue of its enforceability under the SCA because the subpoenaed materials might be otherwise procurable.[36] To that end, counsel asked the court to "clarify that there is no gag order on Facebook" so that it could talk to the government about the subpoena, and argued that any restraint on its ability to speak about the subpoena would violate the First Amendment. The court responded that it had not imposed a "gag" order on Facebook and doubted it had the authority to do so; as permitted by Rule 17(c)(3), it simply had excused the defense from having to notify Mr. Brown that his records were being requested.

At that point, Mr. Pepe's counsel asserted that the court did have the authority to preclude Facebook from disclosing the existence of the subpoena to anyone.

---

[36] A party seeking a subpoena *duces tecum* under Rule 17 must show "'(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production[;] and (4) that the application is made in good faith and is not intended as a 'fishing expedition.'" *Grady v. United States*, 180 A.3d 652, 658 (D.C. 2018) (quotation and alteration omitted).

Counsel stated that Mr. Pepe had a compelling interest in maintaining the confidentiality of his trial strategy and defense investigation. The court noted that Mr. Pepe's strategy was no secret, as he had said in pretrial filings and open court that he would rely on a claim of self-defense. Defense counsel then voiced concern that Mr. Brown might delete his Instagram messages if he were to learn of the subpoena. The court agreed to counsel's request to provide supplemental briefing with respect to a nondisclosure order.

In the briefing that followed, Mr. Pepe claimed, on information and belief, that the government was unaware of the threatening Instagram Story that Mr. Brown allegedly sent to Mr. Pepe. Disclosure to the government of its possible existence, Mr. Pepe argued, would prompt a government investigation that "may lead someone close to Mr. Brown to attempt to tamper with the photo or video" or persons with whom Mr. Brown may have communicated about the threats to alter their own social media profiles. Mr. Pepe also pointed out that the government would need to seek significant additional information from Facebook or the defense in order to discern "whether it could or would seek a warrant" for Mr. Brown's Instagram records. Both the risk of spoliation and governmental intrusion in the defense investigation would "undermine Mr. Pepe's defense."

After considering these arguments, the trial court found "(1) that Mr. Pepe has a compelling interest in having his defense theory, strategy, and investigation remain confidential, that (2) sealing would serve that interest, (3) that in the absence of sealing, that interest would be harmed, and (4) that there are no alternatives to sealing." The court further found, as required by Rule 17(c)(3), that "exceptional circumstances" justified not giving notice of the subpoena to Mr. Brown, "including the likelihood that 'evidence might be lost or destroyed . . . or where the defense would be unfairly prejudiced by premature disclosure of a sensitive defense strategy.'"[37] Accordingly, the court ordered Facebook not to disclose the existence of the subpoena to any other person or entity, with the exception of its own counsel, until after Facebook had complied with the subpoena.

## B. Discussion

Ordinarily, a decision to issue a subpoena *ex parte* or enter a protective order is reviewed for abuse of discretion.[38] The nondisclosure order, however, implicates

---

[37] Super. Ct. Crim. R. 17(c)(3) comment to 2017 amendments.

[38] *Mampe v. Ayerst Labs.*, 548 A.2d 798, 803-04 (D.C. 1988); Super. Ct. Crim. R. 17(c)(3) comment to 2017 amendments ("The Committee leaves to the judgment of the court a determination as to whether the judge will permit the

a question of law – whether it impermissibly burdens Facebook's First Amendment rights – as to which our review is *de novo*.[39]

We start with the understanding that witnesses and other third parties in possession of evidence relating to a civil or criminal proceeding generally have a robust First Amendment right, whether they are under subpoena or not, to speak freely about their knowledge and their involvement in the proceeding whenever and with whomever they please. This right extends to sharing the evidence they possess with either side in the litigation; witnesses do not belong to one side or the other.[40] We do not say the right is absolute; in exceptional circumstances it may be subject

---

question whether such exceptional circumstances exist to be decided *ex parte* and authorize service of the third-party subpoena without notice to anyone.").

[39] *In re Access to Jury Questionnaires*, 37 A.3d 879, 885 (D.C. 2012) (applying *de novo* review to Superior Court's refusal to allow press access to jury questionnaires); *United States v. Doe*, 968 F.2d 86, 88 (D.C. Cir. 1992) (whether Park Service regulation met requirements of a time, place, and manner restriction "is of course a question of law, to be reviewed by an appellate court *de novo*"); *In re Nat'l Sec'y Ltr.*, 863 F.3d 1110, 1121 (9th Cir. 2017) ("Constitutional questions of fact (such as whether certain restrictions create a 'severe burden' on an individual's First Amendment rights) are reviewed *de novo*.") (quotation and alteration omitted).

[40] *Gregory v. United States*, 369 F.2d 185, 188-89 (D.C. Cir. 1966) (prosecutor's advice to eyewitness not to speak with defense unless prosecutor was present denied appellant a fair trial).

to reasonable curtailment. But deviations from the norm of non-constraint require strong justification.

The judicial order in this case mandated that Facebook refrain from discussing the subpoena for its evidence with anyone (except its counsel). Such a "naked prohibition against disclosure[]" of its involvement in this litigation "is fairly characterized as a regulation of pure speech."[41] That regulation is both content-based, because it prohibits the discussion of a particular topic (the subpoena),[42] and a prior restraint on speech, as it "forbid[s] certain communications . . . in advance of the time that such communications are to occur" or before the speaker has the opportunity to make them.[43] Content-based prior restraints are normally subject to review under strict scrutiny,[44] and prior restraints come with a "heavy presumption"

---

[41] *Bartnicki v. Vopper*, 532 U.S. 514, 526 (2001).

[42] *Reed v. Town of Gilbert, Arizona*, 135 S. Ct. 2218, 2227 (2015); *In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876, 881 (S.D. Tex. 2008).

[43] *Alexander v. United States*, 509 U.S. 544, 550 (1993).

[44] *Matter of Subpoena 2018R00776*, 947 F.3d 148, 155 (3d Cir. 2020); *In re Nat'l Sec'y Ltr.*, 863 F.3d at 1121-22; *In re Search Warrant Issued to Google, Inc.*, 269 F. Supp. 3d 1205, 1213 (N.D. Ala. 2017).

against their constitutional validity.[45]  A content-based prior restraint violates the First Amendment unless it serves a compelling state interest and is narrowly tailored so as to "limit[] speech as little as possible."[46]

Section 2705 of the SCA itself provides that governmental entities may apply to a court for a nondisclosure order similar to the one issued here in order to delay notification to customers or subscribers of electronic communication services that their records or communications are subject to a warrant or subpoena.[47]  Courts have reviewed such orders under strict scrutiny,[48] even though the statute arguably

---

[45]  *In re J.D.C.*, 594 A.2d 70, 74 n.6 (D.C. 1991) (quoting *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971)).

[46]  *In re Ti.B.*, 762 A.2d 20, 30 (D.C. 2000); *see also Reed*, 135 S. Ct. at 2226.

[47]  18 U.S.C. § 2705(b); *see also* §§ 2709(a), (c) (allowing the Federal Bureau of Investigation to request subscriber or customer information from providers and, subject to judicial review, prevent providers from disclosing those requests).

[48]  *See, e.g.*, *Matter of Subpoena 2018R00776*, 947 F.3d at 155-56; *Microsoft Corp. v. United States Dep't of Justice*, 233 F. Supp. 3d 887, 906 & n.7 (W.D. Wash. 2017); *Matter of Search Warrant for [redacted].com*, 248 F. Supp. 3d 970, 980-82 (C.D. Cal. 2017); *In re Search Warrant Issued to Google*, 269 F. Supp. 3d at 1213-15; *In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d at 881-82, 886; *see also John Doe v. Mukasey*, 549 F.3d 861, 877-78 (2d Cir. 2008) (declining to decide whether strict scrutiny or some less "exacting" form of review applied to FBI nondisclosure order issued under § 2709).

appears to allow for their issuance under a less stringent standard, a "reason to believe" that disclosure will result in:

> (A) endangering the life or physical safety of an individual; (B) flight from prosecution; (C) destruction of or tampering with evidence; (D) intimidation of potential witnesses; or (E) otherwise seriously jeopardizing an investigation or unduly delaying a trial.[49]

Strict scrutiny is applied to avoid the "substantial risk" to First Amendment rights posed by the approval of these orders, which are content-based prior restraints.[50] In these cases, the compelling interest prong of strict scrutiny is generally satisfied where there is a "reason to believe" disclosure would lead to the adverse consequences enumerated in § 2705(b).[51] On the narrow-tailoring prong, orders that issue for an indefinite time period fail to satisfy strict scrutiny, but orders limiting disclosure for a defined time period have generally been upheld.[52]

---

[49] 18 U.S.C. § 2705(b).

[50] *In re Search Warrant Issued to Google*, 269 F. Supp. 3d at 1215; *Matter of Search Warrant for [redacted].com*, 248 F. Supp. 3d at 982.

[51] *See, e.g.*, *In re Search Warrant Issued to Google*, 269 F. Supp. 3d at 1215 ("calamitous circumstances" enumerated in § 2705(b) "satisfy the compelling interest prong of the strict scrutiny analysis"); *Matter of Subpoena 2018R00776*, 947 F.3d at 156-57; *In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d at 883.

[52] *See, e.g.*, *In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d at 895 (upholding 180 day nondisclosure order and allowing the

We see no reason why a lesser standard of scrutiny should apply where a defendant, allowed under Rule 17(c)(3) to withhold notification,[53] seeks a further order preventing the recipient of the subpoena from disclosing it. Mr. Pepe cites cases arising in other contexts – e.g., where a litigant or third party seeks to disclose confidential information learned in discovery – in which the would-be speaker's involvement in litigation or investigation has been held to allow restraints on speech under a standard somewhat less rigorous than strict scrutiny.[54] In one such context (involving orders or regulations restraining speech about pending trial matters by prosecutors or defense attorneys), that standard has been articulated as requiring a litigant to show that without the order a "substantial likelihood of prejudice" will result.[55] It is this test that Mr. Pepe urges us to apply, arguing that the contents of

---

government to seek an extension upon its expiration if it could show sufficient justification to do so); *In re Search Warrant Issued to Google*, 269 F. Supp. 3d at 1218 (reforming application for indefinite nondisclosure order and limiting it to 180 days); *Matter of Search Warrant for [redacted].com*, 248 F. Supp. 3d at 983. At least one court has held that a § 2705(b) order lasting one year satisfies strict scrutiny. *Matter of Subpoena 2018R00776*, 947 F.3d at 157-59.

[53] We assume arguendo that it was not an abuse of discretion to delay notification of the subpoena to Mr. Brown under this rule, and Facebook has not made any contention to the contrary on appeal.

[54] *E.g.*, *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984); *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1072-75 (1991).

[55] *United States v. Brown*, 218 F.3d 415, 427-28 (5th Cir. 2000) (collecting cases).

his subpoena (and the fact of its issuance) are matters Facebook learned of only because of its involvement in a discovery dispute.

The SCA cases concerning similar government requests have rejected the application of standards less exacting than strict scrutiny.  For example, in *Matter of Search Warrant for [redacted].com*, the court acknowledged that a § 2705(b) nondisclosure order was "akin to a protective order limiting the disclosure of information learned in pretrial discovery," yet still applied strict scrutiny because, unlike in the protective order context, the service provider did not "'gather' the information in question from the government, with the aim of advancing [their] interests in a lawsuit;"[56] that is, the provider, like Facebook in this case, did not itself choose to obtain the information in question.  The Northern District of Alabama also rejected a lesser form of scrutiny over a nearly identical order, holding that learning of the *fact* of a government warrant under § 2703 is distinct from learning of the content of the request as a result of litigation, the service provider having a greater interest in disclosing the existence of the former in order to "publiciz[e] the extent to which the Government invades the privacy of internet users via search warrants

---

[56]  248 F. Supp. 3d at 980-81.

and other devices."[57]  While a defendant's subpoena may not implicate privacy concerns identical to the law enforcement surveillance of internet users' electronic activity, the court approval of a private litigant's gaining access to the account information and communications of others certainly implicates "core" First Amendment issues of governmental affairs and accountability.[58]

At any rate, whether the standard is strict scrutiny or a somewhat lesser standard, it is still a rigorous one.  Our own cases addressing First Amendment limitations on protective orders have required that any order be "necessary to ensure a fair trial . . . or to prevent the abuse of the discovery process" and "carefully drawn . . . so as to limit speech as little as possible."[59]  And the cases cited by Mr. Pepe as requiring a showing of a "substantial likelihood of prejudice" ask at a minimum whether an applicant for a nondisclosure order has presented sufficient facts to persuade a court that the prejudice identified "might well be realized" and whether

---

[57] *In re Search Warrant Issued to Google*, 269 F. Supp. 3d at 1217.

[58] *Id.* at 1217-18.

[59]  *Coulter v. Gerald Family Care, P.C.*, 964 A.2d 170, 186 (D.C. 2009) (quotations and alteration omitted).

the proposed restriction is "essential to the protection of the particular governmental interest involved."[60] Mr. Pepe has not met either prong of even this standard.

We do not deny the possibility that the risks Mr. Pepe identified could be great enough to pose a substantial likelihood of prejudice to his defense and/or satisfy the compelling interest test.[61] Generally speaking, criminal defendants "should be permitted to make an *ex parte* application for pretrial production of documents" under Rule 17 "where notice of a subpoena *duces tecum* would compromise defense

---

[60] *Brown*, 218 F.3d at 428-29.

[61] *See In re Search Warrant Issued to Google, Inc.*, 269 F. Supp. 3d at 1215 (§ 2705(b) order to prevent destruction or tampering with evidence or interference with investigation would satisfy compelling interest test). Nor do we intend to cast doubt on the propriety, under the First Amendment, of the relatively routine issuance, at the trial court's discretion, of protective orders in Superior Court over the government and the defense themselves where a party makes a "particularized, specific showing" that pretrial disclosure of certain materials would interfere with the privacy interests of others, posing a concrete risk of harm. *United States v. Dixon*, 355 F. Supp. 3d 1, 4 (D.D.C. 2019) (construing standard for issuance of protective order under Federal Criminal Rule 16(d) identical to our Criminal Rule 16(d)); *see also Harris v. United States*, 594 A.2d 546, 549 (D.C. 1991) (holding "it was not unreasonable for the trial court to place a temporary and limited restriction" on defense counsel's sharing of potential Jencks Act material with his client "during the period of time it took the court to complete the screening of that material"). We see no reason why a showing of such a protectable interest would not ordinarily be sufficient to indicate that the order is "necessary to ensure a fair trial . . . or prevent the abuse of the discovery process." *Coulter*, 964 A.2d at 186.

counsel's trial strategy."[62]  And, in assessing whether further nondisclosure orders over the subpoena are justified, or whether notice to a victim should be delayed under Rule 17(c)(3), attention to circumstances where notification could result in evidence spoliation is important.[63]  If a third-party subject to a discovery order loses or destroys evidence, it might prove difficult to fashion appropriate remedial sanctions, unlike circumstances in which courts can address, through sanctions or dismissal, the government's failure to preserve discoverable evidence.  Merely raising these risks, however, is not enough to support the curtailment of a subpoenaed party's First Amendment rights.

As the Superior Court noted, the government was fully aware that Mr. Pepe was asserting a self-defense theory, and defense counsel had even emphasized the potential strength of the defense claim to the government.  The government may have been unaware of the nature of the photo and video evidence Mr. Pepe sought, but it is unclear (and he has not shown) how his defense would have been harmed if

---

[62]  *United States v. Sellers*, 275 F.R.D. 620, 625 (D. Nev. 2011); *see also United States v. Reyes*, 162 F.R.D. 468, 470 (S.D.N.Y. 1995); Super. Ct. Crim. R. 17 comment to 2017 amendments.

[63]  Super. Ct. Crim. R. 17 comment to 2017 amendments ("exceptional circumstances" justifying delayed notice may include circumstances where "evidence might be lost or destroyed").

the government were to learn of it.[64]  Moreover, it is far from a foregone conclusion that the government would have learned what Mr. Pepe was seeking had Facebook been permitted to inform the government of the existence of the subpoena.  The subpoena does not disclose that information, and the SCA likely would have prevented Facebook from disclosing the contents of the requested communications and records to the government without a warrant or the consent of either Mr. Pepe or Mr. Brown.[65]  So Mr. Pepe did not establish a substantial risk that Facebook's disclosure of the existence of his subpoena to the government would even result in revealing any additional details of his self-defense strategy.

Mr. Pepe also did not show an appreciable risk of spoliation.  It is true that at the time the Superior Court entered the nondisclosure order, Facebook had not yet represented that it had secured the requested materials, leaving their alteration or

---

[64] A party's common strategic desire to keep potentially favorable evidence under wraps until the eve of trial is not a substitute for a showing that pre-trial disclosure of the evidence at issue in this case would in some way "compromise defense counsel's trial strategy." *Sellers*, 275 F.R.D. at 625.  Superior Court Criminal Rule 16 provides that if a party intends to "use the [evidence] in [their] case-in-chief at trial" they must permit their opponent to inspect it upon their opponent's request.

[65] 18 U.S.C. §§ 2702(a)-(c) (precluding disclosure of communications and non-content records to governmental entities except where authorized under § 2703 or other exceptions for disclosure to the government not applicable here).

destruction a conceivable possibility. However, the likelihood that notice of the subpoena to the government or Mr. Brown would have led to interference with or the deletion of the evidence Mr. Pepe sought was speculative. We think it highly unlikely that informing only the government of the subpoena would have introduced any risk of spoliation; the government would have no interest in allowing evidence to be destroyed and therefore no interest in informing Mr. Brown or his associates of the request without appropriate precautions. Nor does the record make clear that Mr. Brown or others would have been able to destroy information in Facebook's possession responsive to the subpoena even if they wanted to do so.[66] But even assuming the danger of spoliation of the subpoenaed material was sufficient to justify a protective order of some kind and duration *before* Facebook secured that material, that danger would, and did, cease after Facebook did so. Because Facebook had the ability to preserve the information subject to Mr. Pepe's request, the order barring disclosure until after Facebook had complied with the subpoena was more restrictive than was "essential to the protection of the particular [defense] interest involved,"[67] and therefore interfered excessively with Facebook's First Amendment

---

[66] We must discount, as entirely hypothetical, the possibility that Brown, or his associates, might have been inspired and able to destroy other, unknown electronic evidence of value to the defense.

[67] *Brown*, 218 F.3d at 429.

rights. It would have been enough for the order to allow disclosure on Facebook's assurance (which it provided when it first appealed the nondisclosure order) that it had preserved the requested materials from possible loss or destruction.

## IV.

These now articulated rationales support our order of January 16, 2020, affirming the Superior Court's order holding Facebook in contempt and its order denying Facebook's motion to quash the subpoena, and vacating the Superior Court's nondisclosure order.